# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   13-cv-876-SMY-PMF |
| ) | |
| LORI OAKLEY, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Before the Court is defendants' Motion for Summary Judgment (Doc. No. 64).  Plaintiff Paul Smith is proceeding under 42 U.S.C. § 1983 on a claim that he was deprived of a fair and impartial prison disciplinary hearing in violation of his Fourteenth Amendment right to procedural due process.  Smith claims that, after fighting with another inmate at Menard Correctional Center, he was found guilty of assaulting any person, dangerous disturbances, fighting, and disobeying a direct order.  He claims that disciplinary sanctions, including a lengthy term of segregation, were imposed without opportunities to enter a plea, present testimony from a witness or a witness statement, or present his version of the events.  Defendants David Johnson and Timothy Veath seek judgment in their favor, arguing that Smith did not have a liberty interest in avoiding his one-year segregation term, that he received all process due, and that they are entitled to qualified immunity (Doc. No. 65).  The motion is opposed by Smith, who maintains that genuine issues of material fact preclude summary judgment, and that the defendants are not entitled to qualified immunity (Doc. Nos. 72, 78).

I. **Summary Judgment Standard**

Summary judgment will be entered if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The facts and all reasonable inferences are drawn in favor of Smith, the nonmoving party. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

II. **Background**

Viewing the facts in accordance with the summary judgment standard, Smith was confined at Menard Correctional Center in October, 2012. On October 13, 2012, a disciplinary report was prepared, charging Smith with four disciplinary rule violations: assaulting any person, dangerous disturbances, fighting, and disobeying a direct order. He was notified of the charges and appeared before the prison's adjustment committee on October 18, 2012, but was not provided with a fair and impartial hearing. In particular, he did not receive an opportunity to enter a plea or present his version of the events. He was informed that he was being found guilty of assault and was told that he could leave. On the same day, a final report was prepared and signed by defendants Veath and Johnson, finding that Smith committed all four disciplinary offenses and recommending that sanctions, including one year of segregation, be imposed. The report falsely indicated that Anthony Price, the inmate whom Smith had requested as a witness, had been interviewed by Rebecca Cowan and had said during that interview that he didn't know what happened, "All I seen was them two fighting." (Doc. No. 65-3, p. 1). The recommended sanctions were approved without deletion of the three charges Smith would have challenged had he received the opportunity to do so (assaulting any person, dangerous disturbances, disobeying a direct order). Smith served a little less than one year (335 days) in segregation at Menard, Pontiac, and Stateville. All three were maximum security facilities.

### III. Liberty Interest

Smith's liberty interest in avoiding segregated confinement in prison is limited. *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013); *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). A protected liberty interest arises only if the confinement imposed an "atypical and significant hardship" on Smith in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The baseline for the comparison is between the conditions Smith experienced in disciplinary segregation and the conditions in nondisciplinary segregation. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). When determining whether a liberty interest has arisen, the Court considers the combined impact of the duration of the period of segregated confinement and the conditions endured. *Marion*, 559 F.3d at 697-98.

Although Smith was separated from inmates housed in the general prison population for almost an entire year, he was not held in solitary confinement. Rather, he served his segregation time with a number of cellmates. He received opportunities to leave his cell in order to exercise in the yard approximately 3 to 5 hours per week, unless access to the yard was interrupted by a lockdown. He received opportunities to leave his cell to shower approximately one or two times per week. The cells in Menard's segregation unit are smaller than the cells in Menard's general population units, and provide no shelves, no desk or stool, and no room to walk. Smith had opportunities to leave his cell for visits to the prison's health care unit, for attorney visits, and for one or two regular visits per month. He could not leave his cell to take his meals in the dining hall or to attend religious services. At Menard, he could not leave his cell to visit the law library. At Pontiac, he could leave his cell to visit a separate location on the gallery which served as a satellite law library, once per week. Smith's clothing was restricted to a jumpsuit and one pair of gym shoes. His personal property was initially restricted to legal and writing supplies, cosmetic items,

and reading material. After 60 days of good conduct, he was allowed to add a radio and television.

The restrictive conditions Smith experienced in segregation did not cause or aggravate any medical ailment. Similarly, there is no indication that Smith lost the ability to maintain basic hygiene by using water from the sink in his cell to cleanse his body when he was unable to shower. There is also no evidence that the nourishment Smith received from the meals delivered to his cell was deficient, that he was exposed to excessive violence from hostile inmates, or that he suffered psychological harm as a result of the restrictions imposed. Similarly, there is no evidence that the cells Smith occupied were particularly oppressive, or that he was subjected to long periods of isolation, sensory deprivation, light deprivation, or temperature extremes.

The Court has considered Smith's position that the deprivation of a liberty interest issue was assessed and resolved early in this case, during threshold review. A careful reading of Judge Gilbert's screening order (Doc. No. 9) reveals that the question of whether Smith was deprived of a protected liberty interest was not resolved at that time, but deferred for factual development.

The Court has also considered Smith's opinion that the conditions he experienced in segregation at Menard, Pontiac, and Stateville were "deplorable." Unfortunately, this conclusion is not well-supported by specific factual information (Doc. No. 72-1, p. 22). The Court has been unable to locate evidence demonstrating that Smith experienced conditions substantially worse than those experienced by inmates assigned to administrative segregation.

Considering all available facts in Smith's favor, the Court is not persuaded that Smith's 335-day segregation term created an atypical and significant hardship giving rise to a liberty interest.

### IV.     Qualified Immunity

In considering whether these defendants are entitled to qualified immunity on Smith's due process claim, the Court considers (1) whether the defendants violated plaintiff's constitutional rights and (2) whether that right was clearly established at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*.

Here, the Court focuses on the second part of the qualified immunity equation. Smith suggests that the defendants knew the applicable law and knew that their actions were unlawful. He points to a discovery response admitting that the defendants were familiar with prison policies and procedures regarding adjustment committee functions (Doc. No. 72-1, p. 14). This position does not take into account the developing Constitutional law regarding prisoner liberty interests in avoiding assorted periods of segregated confinement. The Court is not aware of any case decided prior to October 18, 2012, establishing that the disciplinary sanction of 335 days in segregated confinement in a maximum security facility in Illinois imposes an atypical and significant hardship. Instead, the case law suggests that a protected interest *may* arise and requires scrutiny. Absent a clear legal parameter on the question of Smith's protected liberty interest, the defendants are immune from an award of damages.

In view of the conclusions reached from the above analysis, the Court does not reach Defendants' argument that the procedural protections provided to Smith were adequate to satisfy the Constitutional due process standard.

### V.     Conclusion

IT IS ORDERED that defendants' motion for summary judgment (Doc. No. 64) is

GRANTED. The Clerk is directed to enter judgment against plaintiff Paul Smith and in favor of defendants David Johnson and Timothy Veath.

If plaintiff wishes to appeal, a notice of appeal must be filed within 30 days after the Clerk enters judgment. A notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. If plaintiff wishes to file a motion asking the Court to alter or amend the judgment, that motion is due within 28 days, and there is an exception from the general rule for extending time. See Fed. R. Civ. P. 59, 6; Fed. R. App. P. 4, 12.

**DATED:   August 11, 2015.**

  s/Staci M. Yandle
**Staci M. Yandle
District Judge**
